United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| BAITING JIANG, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>KNTV TELEVISION LLC, et al.,<br><br>Defendants. | Case No. 21-cv-01293-LB<br><br>**ORDER ADDRESSING MOTION TO DISMISS**<br><br>Re: ECF No. 150 |

## INTRODUCTION

This lawsuit arises from news reports by KNTV Television LLC (branded on air and on its website as NBC Bay Area) about a dispute involving plaintiff Baiting Jiang, her former landlord, and members of the landlord's family involving claims of harassment and restraining orders, all during the COVID-19 pandemic. The case started with Ms. Jiang's single claim of defamation and now involves more than forty claims and her attempt to include her mother, Lanjiao Qin, as a plaintiff. Both plaintiffs are representing themselves and proceeding in forma pauperis. Ms. Jiang's lawsuit has no merit: at its core, she complains about defamation, a claim that fails as a matter of law because KNTV's reporting about official records and proceedings is privileged. Her other claims are derivative of this claim and fail too. Putative plaintiff Lanjiao Qin lacks standing.

Procedurally, Ms. Jiang and the defendant consented to magistrate-judge jurisdiction. Ms. Jiang tried to withdraw her consent, but the duty district judge denied that request. Late in the

ORDER – No. 21-cv-01293-LB

case, Ms. Jiang added her mother, who declined magistrate-judge jurisdiction. Even though she declined, under the statute and the Northern District's operating procedures for those proceeding in forma pauperis, the court must screen Ms. Qin's complaint for minimal legal viability. 28 U.S.C. § 1915(e)(2)(B). Because she has no standing for her claims, the court will sever her case and issue a report and recommendation – attaching this order as support — to dismiss her case for lack of jurisdiction. Then, the court will dismiss the claims with prejudice and enter judgment in favor of the defendants.

**STATEMENT**

**1. The News Reports**

NBC Bay Area reporters issued three news reports in October and November 2020 about eviction proceedings brought by Ms. Jiang's former landlord against her. In the reports, Ms. Jiang disputes her former landlord's allegations that she threatened and harassed the landlord's family. The reports also discuss the effect of the pandemic on landlords and tenants in the Bay Area.[1] Public records confirm that that during this tenant-landlord dispute, Ms. Jiang filed six civil-harassment/restraining-order actions against the landlord and his family members. The landlord also filed a civil-harassment/restraining-order action against Ms. Jiang.[2]

---

[1] Reports, Exs. A–C (filed manually); Trs., Exs. A-3, B-3, & C-3 to Burns Decl. – ECF Nos. 150-4, 150-7, & 150-10. Citations refer to the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Public Records, Exs. D-J to Burns Decl. – ECF Nos. 150-11–150-17. The court judicially notices the documents and the other documents referenced in the defendant's request for judicial notice. Req. for Judicial Notice – ECF No. 150-2. Generally, the court does not consider material beyond the pleadings in ruling on a motion to dismiss. *United States v. Corinthian Colleges*, 655 F.3d 984, 998-99 (9th Cir. 2011). But the complaint refers to websites with the reports. The court thus considers them under the incorporation-by-reference doctrine. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The public records can be judicially noticed for their existence and contents. Fed. R. Evid. 201; *Lee v. Cnty. of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001).

**2. Procedural History**

The court held in an earlier order that there was no diversity of parties.[3] Then, KTVN moved to dismiss the plaintiff's subsequent appeal because in fact there was diversity.[4] After remand, Ms. Jiang asked many times to extend the filing date of her amended complaint and missed many deadlines.[5] Ultimately, the court allowed Ms. Jiang's January 2, 2024, late filing of a roughly 150-page complaint (spread over three docket entries).[6] That complaint added Ms. Jiang's mother as a plaintiff for the first time. It has over forty claims, including those that are nonsensical: e.g., a violation of Ms. Jiang's rights to education and marriage, the right to bear arms, protection from cruel and unusual punishment, tax evasion, and whistleblower protection.[7] The complaint demands $50 billion and permanent injunctive relief.[8] The complaint has other problems, as the court summarized in an earlier order:

> First, Ms. Jiang put a lawyer's name — Qin Li – on the caption (with an address and telephone number) and on the signature page. The lawyer's signature does not appear, but after Ms. Jiang's electronically generated signature, Ms. Jiang typed "[r]epresented by attorney Qin Li." The complaint spans three docket filings, totals 143 pages, and was written by Ms. Jiang. Whether intentional or not, this is a misrepresentation that Ms. Jiang has a lawyer because Mr. Li has not appeared. It seems unlikely, given his law practice, that he will.
>
> Second, from the complaint (at least through a preliminary perusal), the court cannot tell why Ms. Qin is in the lawsuit. She can be in the lawsuit only if she suffered injury. Injury to her daughter, Ms. Jiang, is not enough.
>
> "The 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560). Article III requires "a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560–61. "The plaintiff, as the party

---

[3] Order – ECF No. 48.
[4] Order – ECF No. 70.
[5] *See, e.g.*, ECF Nos 90, 92, 94, 97, 99, 107, 114, 115, 120, 121, and 124.
[6] First Am. Compl. – ECF Nos. 129, 129-1, 129-2.
[7] *Id.* – ECF Nos. 129-1 at 18–50 & 129-2 at 1–43 (pp. 68–143).
[8] *Id.* – ECF No. 129-2 at 40–43 (pp. 140–43).

invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo*, 578 U.S. at 338.

Without injury, Ms. Qin lacks standing. *Warth v. Seldin*, 422 U.S. 490, 502 (1975) ("[]petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members . . . which they purport to represent"). The complaint does not identify the injury that she suffered from the events underlying the lawsuit.

Third, Ms. Jiang's assistance of her mother, Ms. Jiang's statement that she is a foreign attorney with an email of tinglaw218@gmail.com, Ms. Qin's electronically generated signature, and the lack of required forms suggest that Ms. Jiang purports to represent her mother and create uncertainty that Ms. Qin agreed to join the lawsuit. Ms. Jiang can represent herself, but she cannot represent another person. *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 800 n.2 (9th Cir. 2017) (quoting *Stoner v. Santa Clara Cnty. Office of Educ.*, 502 F.3d 1116, 1126 (9th Cir. 2007)).[9]

Mr. Li never appeared in the case.[10] The defendant then filed its motion to dismiss.[11] Ms. Jiang filed many oppositions.[12] The court ultimately ordered her to stop filing oppositions.[13] Ms. Jiang briefly retained a lawyer, who ultimately was barred from practicing in the Northern District.[14]

Ms. Jiang and the defendants consented to magistrate-judge jurisdiction under 28 U.S.C. § 626(c).[15] The duty district judge denied Ms. Jiang's motion to withdraw her consent.[16] Ms. Qin declined magistrate-judge jurisdiction.[17] The court can consider the motion without oral argument. Civil L. R. 7-1(b).

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds

---

[9] Order – ECF No. 133 at 3–4 (footnotes omitted), *amended*, Order – ECF No. 210 (fixing caption).

[10] Burns Decl. – ECF No. 140-1 at 2 (¶ 2) & Email Chain, Ex. A to *id.* – ECF No. 140-2 (explaining that Mr. Li is a limited-scope attorney for Ms. Jiang).

[11] Mot. – ECF No. 150.

[12] *See* Docket.

[13] Order – ECF No. 176.

[14] Substitution of Attorney – ECF No. 183; Order – ECF No. 199.

[15] Consents — ECF No. 12, 31.

[16] Order – ECF No. 212.

[17] Declinations – ECF No. 136, 138, & 139.

upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).)

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations that, when accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020). "[O]nly the claim needs to be plausible, and not the facts themselves ...." *NorthBay*, 838 F. App'x at 234 (citing *Iqbal*, 556 U.S. at 696); *see Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up).

Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (cleaned up).

Federal courts must construe pro se complaints liberally. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). A pro se plaintiff need only provide defendants with fair notice of her claims and the grounds upon which they rest. *Hearns*, 413 F.3d at 1043. She need not plead specific legal theories so long as sufficient factual averments show that she may be entitled to some relief. *Id*. at 1041.

If a court dismisses a complaint because of insufficient factual allegations, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook,*

*Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If a court dismisses a complaint because its legal theory is not cognizable, the court should not give leave to amend. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016).

This order also is an initial screening of Ms. Qin's claims.

A complaint filed by any person proceeding in forma pauperis under 28 U.S.C. § 1915(a) is subject to a mandatory and sua sponte review and dismissal by the court to the extent that it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001); *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc). "The language of § 1915(e)(2)(B)(ii) parallels the language of Federal Rule of Civil Procedure 12(b)(6)." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). As the Supreme Court has explained, "[the in forma pauperis statute] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

Thus, under Rule 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B), the district court must dismiss Ms. Qin's complaint if it fails to state a claim upon which relief can be granted.

### ANALYSIS

Ms. Qin lacks standing, and Ms. Jiang does not state a claim.

### 1. Plaintiff Lanjiao Qin Lacks Standing

"The 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. (citing *Lujan*, 504 U.S. at 560). Article III requires "a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged

1  action of the defendant." *Lujan*, 504 U.S. at 560–61. "The plaintiff, as the party invoking federal
2  jurisdiction, bears the burden of establishing these elements." *Spokeo*, 578 U.S. at 337.

3  Ms. Qin was not named or referenced in any way in the news reports. Ms. Jiang contends that
4  "[a]ll the injuries that Plaintiff Baiting Jiang suffered . . . were directly or indirectly linked to
5  injuries suffered by Plaintiff Lanjia Qin."[18] Ms. Jiang also says that her "ability to take care of her
6  mother was greatly impaired" due to the news reports.[19] The complaint has no facts showing
7  injury to Ms. Qin. At best, it says that she was hurt by what happened to her daughter.[20]

### 2. Plaintiff Baiting Jiang

There are two issues: (1) whether the news reports are protected and (2) whether the non-defamation claims also fail. Ms. Jiang does not state claims.

#### 2.1 The Reports

The elements of a claim of defamation are "(1) a publication that is (2) false, (3) defamatory, (4), unprivileged, and (5) has a natural tendency to injury or causes special damage." *John Doe 2 v. Super. Ct.*, 1 Cal. App. 5th 1300, 1312 (2016). The complaint does not identify the statements that purportedly are defamation. The reports about official records are in any event protected by the First and Fourteenth Amendments of the U.S. Constitution; Article 1, § 2 of the California Constitution; and California Civil Code §§ 47(d)–(e) because they are fair and true reports.

First, the complaint generally does not allege specific defamatory statements. *New York Times v. Sullivan*, 376 U.S. 254, 285 (1964) (courts must review the allegedly defamatory statements to determine whether they are "of a character which the principles of the First Amendment . . . protect"). When a plaintiff seeks damages for conduct protected by the First Amendment, "the

---

[18] Statement re Standing – ECF No. 147 at 2.

[19] *Id.* at 4.

[20] First Am. Compl. – ECF No. 129 at 22 (¶ 25) ("Instead of adhering to the agreed-upon terms, [the defendants] opted to disseminate inaccurate details with the aim of harming Plaintiff Baiting Jiang, targeting her character, career, victim status, nationality, and even her mother Plaintiff Lanjiao Qin."), First Am. Compl. – ECF No. 129 at 31 (¶ 57) ("Plaintiff Lanjiao Qin, both as a person directly injured by Defendants and as a bystander experiencing the pain caused by her daughter's injury, has standing to sue.").

danger that the mere pendency of the action will chill the exercise of the First Amendment rights requires more specific allegations than would otherwise be required." *Flowers v. Carville*, 310 F.3d 1118, 1130 (9th Cir. 2002). The plaintiff thus must plead "the precise statements alleged to be defamatory, who made them[,] and when." *Id.* at 1131.

Second, and dispositively, the statements at issue are protected.

California Civil Code § 47(d)(1) provides that "a privileged publication or broadcast is one made . . . [b]y a fair and true report in, or a communication to, a public journal, of (A) a judicial, (B) legislative, or (C) other public official proceeding, or (D) of anything said in the course thereof, or (E) of a verified charge or complaint made by any person to a public official, upon which complaint a warrant has been issued." It provides absolute protection for fair and true reports of public proceedings and records. *McClatchy Newspapers, Inc. v. Super. Ct.*, 189 Cal. App. 3d 961, 976 (1987). The First and Fourteenth Amendments to the U.S. Constitution and Article I, § 2 of the California Constitution also provide an absolute privilege for reporting about official records and proceedings. *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495–96 (1975) (accurate report of court records was absolutely protected by federal constitution); *Gates v. Discovery Comm'ns, Inc.*, 34 Cal. 4th 679, 696 (2004) (absolute First Amendment privilege applied to news report about obscure public court record).

For section 47(d) to apply, a report must have "some connection or logical relationship to the proceedings," which is a "lenient" standard that is "more lax than the concept of relevancy itself." *McClatchy*, 189 Cal. App. 3d at 972–74. The privilege "carries with it a certain amount of literary license. The reporter is not bound by the straitjacket of the [record's] exact words." *Id.* at 975–76; *see Argenteri v. Zuckerberg*, 8 Cal. App. 5th 768, 788 (2017) ("the privilege will apply even if there is a slight inaccuracy in details — one that does not lead the reader to be affected differently by the report than he or she would be by the actual truth"). A report is absolutely protected if it captures "the substance, the gist, [or] the sting" of the court record or proceeding. *Sipple v. Found. for Nat. Progress*, 71 Cal. App. 4th 226, 244 (1999). Because the privilege is absolute, it "does not require the reporter to resolve the merits of the charges, nor does it require that he present the [plaintiff's] version of the facts." *Dorsey v. Nat'l Enquirer*, 973 F.2d 1431, 1436 (9th Cir. 1992). Section 47(d)

shields news reports that present "a history of [a] proceeding," including not only court records, but also related interviews. *Hayward v. Watsonville Register-Pajaronian & Sun*, 265 Cal. App. 2d 255, 260–61 (1968) (privilege applied to article based on "oral statements of district attorneys, sheriffs, and police officers" as well as records).

    Nothing in the news reports exceeds the statements made in the court and police record, the eviction proceedings, or the civil-harassment proceedings between Ms. Jiang and her landlord.[21] The reports recount interviews with Ms. Jiang and members of her former landlord's family about the landlord's eviction proceeding against Ms. Jiang, the history of the eviction suit and civil-restraining-order proceedings, statements from related filings, and statements made in court.[22] For example, the plaintiffs allege that KNTV falsely reported that Ms. Jiang "intentionally flooded a bathroom in the house, leading to tens-of-thousands of dollars in water damage."[23] These allegations appear in the police record (shown on screen with a voiceover about the allegation) and in a restraining-order request that the landlord filed.[24] Another example is that Ms. Jiang accuses the broadcast as conveying "the false and defamatory message that Jiang forced the former landlords out of their home" and "harassed their family."[25] In fact, the report explains — as reflected in court filings — that the family chose to leave the home because they feared Ms. Jiang, she refused to leave after they served an eviction notice, and the eviction process was delayed because of the eviction moratoria and court backlogs.[26] The specific statement in the report was "[f]earing for their mental health and safety, the family said they were pushed out of their own home."[27] These allegations align with those in the landlord's restraining-order request, which

---

[21] Court Docs., Exs. D–L to Burns Decl. – ECF Nos. 150-11–150-19.

[22] Video Reports, Exs. A–C (filed manually); Trs., Exs. A-3, B-3, & C-3 to Burns Decl. – ECF Nos. 150-4, 150-7, & 150-10.

[23] First Am. Compl. – ECF No. 129-1 at 5 (¶ 79) (p. 55), 6 (¶ 84) (p. 56), 16 (¶ 120) (p. 66).

[24] Police Report, Ex. M to Burns Decl. – ECF No. 177-2 at 21; Video Report, Ex. A-1 to Burns Decl. – ECF No. 150-2 at 01:21; Tr., Ex. A-3 to Burns Decl. – ECF No. 150-4 at 5 (p. 3:10–18).

[25] First Am. Compl. – ECF No. 129 at 49 (¶ 63) (p. 49).

[26] *See* Video Reports, Exs. A–C (filed manually) to Burns Decl. – ECF Nos. 150-2, 150-5, & 150-8; Trs., Exs. A-3, B-3, & C-3 to Burns Decl. – ECF Nos. 150-4, 150-7, & 150-10.

[27] Tr., Ex. A-3 to Burns Decl. – ECF No. 150-4 at 8 (p. 6:6–12).

alleges that Jiang "harassed [the landlord and her] young daughter continually" and that as a result of the harassment, the landlord was admitted to the hospital for suicidal ideation and the family no longer felt safe in the home.[28]

Reporting the above is privileged. *Dorsey*, 973 F.2d at 1437 (section 47(d) shielded entire article about family-court matter, including out-of-court statements about a related private investigation); *Crane v. Ariz. Republic*, 972 F.2d 1511, 1521–22 (9th Cir. 1992) ("[s]tatements made by persons substantially involved in a privileged proceeding, pertaining directly to the issues covered by that proceeding, and made in the course of that proceeding fall within the privilege's compass") (cleaned up); *Sipple*, 71 Cal. App. 4th at 242 (privilege applied to direct quotes from witnesses making allegations similar to those in depositions and "anything said in the course of" a "judicial proceeding").

The plaintiffs contend that KNTV should have included Ms. Jiang's account that the house was in disrepair before she moved in, that she had to sleep in her car, and that the landlord impermissibly removed the toilet and sink from her room.[29] The fair-report privilege "does not require [a defendant] to have presented plaintiff's side of the story. *Smith v. Press Democrat*, No. C 11-02411 SI, 2011 WL 5006463, at *5 (N.D. Cal. Oct. 20, 2011) (citing *Dorsey*, 973 F.2d at 1436); *Paterno v. Super. Ct.*, 163 Cal. App. 4th 1342, 1355 (2008) (rejecting the plaintiff's argument that it could overcome the privilege because the defendant did not "place [the] legal proceeding 'in context by including what [the plaintiff] considers are the 'key facts'"). The plaintiffs also contend that the reports inaccurately reported the results of the restraining order.[30] The reports accurately reported that the trial court granted restraining orders against Ms. Jiang and the landlord and that some restraining orders filed by Ms. Jiang against the family were denied.[31]

---

[28] Req. for Restraining Order, Ex. K to *id.* – ECF No. 150-18 at 8 (p. 1); Pet., Ex. L to *id.* – ECF No. 150-19 at 3, 5–6, 31–32.

[29] Opp'n – ECF No. 170-3 at 5, 13–14.

[30] *Id.* at 47.

[31] Report, Ex. A-2 to Burns Decl. – ECF No. 150-3 at 5 (p. 4); Report, Ex. C-2 to *id.* – ECF No. 150-9 at 7 (p. 6); Tr., Ex. C-3 to *id.* – ECF No. 150-10 at 6 (p. 4); *see* Dockets, Exs. D, F–J to *id.* – ECF Nos. 150-11, 150-13–150-17 (all other restraining orders were dismissed).

ORDER – No. 21-cv-01293-LB                    10

1  The plaintiffs contend that the reports present an inaccurate timeline by wrongly implying that the
2  landlord's family was "forced out of the house for over one year, or at least over half a year."[32] This
3  is a "minor inaccuracy[y]" that "do[es] not amount to falsity." *See Vogel v. Felice*, 127 Cal. App.
4  4th 1006, 1021 (2005).

5  Finally, many of the allegedly defamatory statements do not support a conclusion that they are
6  defamatory at all.

7  Whether a statement is susceptible to a defamatory meaning is a question of law. *Dodds v.
8  ABC Inc.* 145 F.3d 1053, 1065 (9th Cir. 1998). That determination is made "from the standpoint of
9  the average reader, judging the statement not in isolation, but within the context in which it is
10 made." *Norse v. Henry Holt & Co.,* 991 F.2d 563, 567 (9th Cir. 1993); *Franklin v. Dynamic
11 Details, Inc.*, 116 Cal. App. 4th 375, 389 (2004) ("courts look at the nature and full context of the
12 communication and to the knowledge and understanding of the audience to whom the publication
13 was directed"); *Balzaga v. Fox News Network, LLC*, 173 Cal. App. 4th 1325, 1338–39 (2009) (no
14 reasonable viewer could have understood a news program's caption to have a defamatory
15 meaning; a court must consider the full context of the broadcast; if the alleged statement is in a
16 headline, "the headline must be read in conjunction with the entire article").

17 The plaintiffs claim that the reports accuse Ms. Jiang of prostitution by including a statement
18 from the landlord's son that the plaintiff had a "different lifestyle."[33] The reports make no mention
19 of prostitution. The statement is part of a discussion about whether the landlord obtained required
20 building permits and who reported an unpermitted building to the housing authorities.[34] The
21 inclusion of a video clip — where Ms. Jiang tells a police officer that she does not want to speak
22 with him without a lawyer — does not "mislead" a reasonable viewer that "Jiang is guilty of a
23 crime and a violent person."[35] As discussed above, the reports were accurate: Ms. Jiang obtained a

---

[32] First Am. Compl. – ECF No. 129 at 32 (¶ 14) (a notice went out in July 2020 that all occupants must vacate the property; the plaintiff moved out in October 2020), 25; Opp'n – ECF No. 170-3 at 12.

[33] First Am. Compl. – ECF No. 129 at 29 (¶ 7).

[34] Video Report, Ex. C-1 to Burns Decl. at 01:42; Tr., Ex. C-3 to *id.* – ECF No. 150-10 at 5 (p. 3:10–13).

[35] First Am. Compl. – ECF No. 129 at 51 (¶ 68) (making this accusation); Video Report, Ex. A-1 to Burns Decl. at 02:52; Tr., Ex. A-3 to *id.* – ECF No. 150-4 at 6 (p. 4:21–23).

United States District Court
Northern District of California

restraining order against her landlord but not against her landlord's children or their father. Ms. Jiang suggests that the reports create the false impression that she "forced [her landlord]'s family out" or caused them to lose the house.[36] In fact, as discussed above, the family said that they chose to leave the home because they feared Ms. Jiang, she refused to leave after they served an eviction notice, and the eviction process was delayed because of the eviction moratoria and court backlogs.[37] It was the water damage and a failure to receive rent that caused the loss of the home.[38] Ms. Jiang complains that the reports "intentionally concealed the fact that she fulfilled her rent obligations."[39] As discussed above, the reports actually make the point that the pandemic and court congestion delayed her eviction.[40]

Other statements never were made. For example, the plaintiffs say that KNTV "falsely accused [the plaintiff] of harming a minor and wielding a knife to harm the former landlords' children and family.[41] Nothing like that appears in the reports. The plaintiffs says that KNTV "outright state[d] that Jiang was culpable for racist behavior for which she should apologize[] and be subject to legal punishment.[42] The reports do not say that. The plaintiffs claim that KNTV reported that Ms. Jiang "demanded the payment of large sums of money."[43] The reports do not say that.

In sum, these claims must be dismissed.[44]

---

[36] First Am. Compl. – ECF No. 129 at 15–16 (¶ 19).

[37] *See* Video Reports, Exs. A–C (filed manually); Trs., Exs. A-3, B-3, & C-3 to Burns Decl. – ECF Nos. 150-4, 150-7, & 150-10.

[38] Report, Ex. A-2 to Burns Decl. – ECF No. 150-3; Tr., Ex. A-3 to *id.* – ECF No. 150-4 at 8 (p. 6:16–19).

[39] First Am. Compl. – ECF No. 129-1 at 33 (¶ 66) (p. 83).

[40] Reports, Exs. A–C (filed manually); Trs., Exs. A-3, B-3, & C-3 to Burns Decl. – ECF Nos. 150-4, 150-7, & 150-10.

[41] First Am. Compl. – ECF No. 129-2 at 13 (p. 113).

[42] *Id.* at 38 (¶ 38).

[43] *Id.* at 16.

[44] The plaintiffs' multiple oppositions span hundreds of pages and continued even after the court ordered the plaintiffs to stop filing oppositions. This order does not summarize every statement or argument in them. The court has read them all.

The plaintiffs object to the defendants' arguments on the ground that the plaintiffs abandoned their anti-SLAPP motion: "[the] failure to press their Anti-SLAPP free speech and sufficiency issues for affirmance renders their multiple assertions of First Amendment and 'fair' reporting, and litigation privilege claims (all falling under the umbrella of Anti-SLAPP claims that they previously asserted but abandoned on appeal) are a nullity under the doctrine of res judicata or claim preclusion" because "KNTV failed to press their Anti-SLAPP free speech and sufficiency issues for affirmance" when the case was on appeal.[45] These doctrines apply to subsequent proceedings, not the same proceeding, and there has been no final judgment on the merits.[46] *Stewart v. U.S. Bancorp,* 297 F.3d 953, 956 (9th Cir. 2002); *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019) (claim preclusion does not apply for the additional reason that "an issue must have been 'actually and necessarily determined by a court of competent jurisdiction' to be conclusive in a subsequent suit").[47]

The plaintiffs also claim lack of service.[48] That is incorrect. Ms. Jiang is an efiler. When Ms. asked for another copy of the videos, the defendants provided it.[49] The court has served Ms. Qin, who in any event will be subject to a separate report and recommendation to dismiss her case for lack of jurisdiction via an initial screening under 28 U.S.C. § 1915(e)(2)(B). Also, the court sent the defendants courtesy copies of the plaintiffs' voluminous filings because they filed them under seal and did not serve them.[50]

---

[45] Opp'n – ECF No. 170-3 at 56.

[46] Reply – ECF No. 177 at 9–10 (making these arguments).

[47] After the court's earlier grant of KNTV's anti-SLAPP motion, Ms. Jiang filed a new lawsuit in state court against KNTV, its parent company, the landlord, and members of the landlord's family. Mot. – ECF No. 150 at 11 n.2 (citing state court case; the trial judge granted the parent company's anti-SLAPP motion, and Ms. Jiang's appeal is pending).

[48] Admin. Mot. – ECF No. 175-2 at 3–4.

[49] Reply – ECF No. 177 at 7; Burns Suppl. Decl. – ECF No. 177-1 at 2 (¶ 3).

[50] *See* Docket.

The plaintiffs claim spoliation of evidence by editing the reports and destroying YouTube comments.[51] No fact allegations support the claim of editing the reports. As the defendants point out, they are not responsible for preserving evidence that they do not control.[52]

**2.2 Other Claims**

When the First Amendment bars a defamation claim, it bars other claims arising from the same facts.[53] *Gilbert v. Sykes*, 147 Cal. App. 13, 34 (2007) ("the collapse of [the] defamation claim spells the demise of all other causes of action . . . which allegedly arise from the same publication"); *Gallagher*, 563 F. Supp. 3d 1048, 1104–05 (S.D. Cal. Sep. 27, 2021) (dismissing claim of intentional infliction of emotional distress as duplicative of the defamation claim); *Rudwall v. Blackrock, Inc.*, No. C 06-2992 MHP, 2006 WL 3462792, at *6 (N.D. Cal. Nov. 30, 2006) (granting motion for judgment on the pleadings as to intentional infliction of emotional distress when the plaintiff did "nothing more than recite the *elements* of this cause of action without adding any new *factual* allegations differentiating it from his libel claim"), *aff'd*, 289 F. App'x 240 (9th Cir. 2008). *Dworkin v. Hustler Mag., Inc.*, 668 F. Supp. 1408, 1420 (C.D. Cal. 1987) (a plaintiff "cannot maintain a separate cause of action for mental and emotional distress where the gravamen is defamation"), *aff'd*, 867 F.2d 1188 (9th Cir. 1989); *Noel v. River Hills Wilsons, Inc.*, 113 Cal. App. 4th 1363, 1367 n.5, 1372–73 (2003) (affirming summary judgment on claims that "stemmed from" the same comments as the libel claim, which was privileged).

Moreover, as the defendants recite, even if the claims are not barred by the First Amendment, the plaintiffs' derivative claims nonetheless fail for many reasons.

First, the second claim is for intentional infliction of emotional distress. In California, "[a] cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the

---

[51] Opp'n – ECF No. 169-3 at 5; Opp'n – ECF No. 170-3 at 5; Admin. Mot. – ECF No. 175-2 at 5.
[52] Reply – ECF No. 177 at 8.
[53] Mot. – ECF No. 150 at 23 (making this argument).

probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Kelley v. Conco Cos.*, 196 Cal. App. 4th 191, 215 (2011) (cleaned up). A defendant's conduct is outrageous when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (cleaned up). Reporting allegations from official proceedings is not outrageous conduct.

Second, the plaintiffs' constitutional claims (brought under 42 U.S.C. § 1983) fail because the defendants are not state actors.[54] *Brunette v. Humane Soc'y of Ventury Cnty.*, 294 F.3d 1205, 1209 (9th Cir. 2002) (liability under § 1983 extends to a private party only if it "engaged in state action under color of law and thereby deprived a plaintiff of some right, privilege, or immunity protected by the Constitution or the laws of the United States"). The defendants are not state actors. *O'Handley v. Weber*, 62 F.4th 1145, 1156–57 (9th Cir. 2023) (online platform was not a state actor); *Brunette*, 294 F.3d at 1214 (the media was not a state actor). The claim for conspiracy (claim four) fails because the plaintiffs cannot allege a civil-rights violation.

Third, the fourth claim is for copyright infringement. There is no copyright at issue here. The claims for misappropriation and right of publicity (claims seven and thirty) fail because the First Amendment limits statutory and common-law misappropriation claims when the works are expressive works like the reports. *Daly v. Viacom*, 238 F. Supp. 2d 1118, 1122–23 (N.D. Cal. 2002).

Fourth, the claims for quantum meruit/reasonable value of intellectual property (claim six), privacy (claim twenty-two), unjust enrichment (claim twenty-four), and unfair competition (claim twenty-nine) fail because they are not related to KNTV's action and instead are about the

---

[54] The claims are misnumbered in the complaint and are referenced here by the numbers that the plaintiffs assign them. They are claims three (right to education), six (private property taken for public use), ten (right to education), eleven (right to marriage), twelve (freedom of speech), thirteen (equal protection), sixth (due process), seven (cruel and unusual punishment), eight (excessive bail and fines), nine (freedom of religion), twenty (peaceful assembly), twenty-one (right of petition), twenty-three (right to work), twenty-five (right of housing), twenty-six (right to parenthood), twenty-seven (habeas corpus), thirty-eight (Fourth Amendment), and forty-one (right to bear arms). First Am. Compl. – ECF Nos. 129-1 at 30, 43–46, & 49–50 (pp. 82, 93–96, & 99–100), 129-2 at 1, 4–8, 10, 12, 15, 27 & 34 (pp. 101, 104–08, 110, 112, 115, 127, & 134).

landlord's GoFundMe account (linked in the media report).[55] *Vazquez v. Buhl*, 150 Conn. App. 117, 131 (2014) (defamation claim over hyperlink in CNBC.com article to allegedly defamatory third-party content barred); *Pearson Educ., Inc. v. Ishayev*, 9 F. Supp. 3d 328, 338 (S.D.N.Y. 2014) (cleaned up) ("A hyperlink . . . is the digital equivalent of giving the recipient driving directions to another website on the Internet. A hyperlink does not itself contain any substantive content").

Fifth, the remaining claims fail too. The fraud claims (claims eight and nine) fail because there is no misrepresentation. *Williams v. Facebook, Inc.*, 498 F. Supp. 3d 1189, 1201 (N.D. Cal. 2019) (elements of fraud). The (misnumbered) fifth claim fails: it is hard to tell what the plaintiffs complain about (possibly the video of the officer questioning Ms. Jiang, but that was in a public place). The twenty-eighth claim (the right to no discrimination) does not make any sense: these were reports about the effects of the pandemic on eviction proceedings, not action taken because of a protected class (assuming that there is even a potential right implicated here). Other claims for malicious prosecution, violation of the UCL, extortion, breach of fiduciary, tax evasion, whistleblower protection, battery and assault, a violation of the Fourth Amendment, and wrongful eviction (claims thirty, thirty-three, and thirty-five through forty) make no sense here, at least as claims against KNTV.

### 3. Amendment

Ms. Jiang has amended her complaint multiple times. In its current form, it is 150 pages. She has had every opportunity to cure the issues, and she has not. *Cf. Cook*, 911 F.2d at 247 (If a court dismisses a complaint because of insufficient factual allegations, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts."); *Lira v. Herrera*, 427 F.3d 1164, 1176 (9th Cir. 2005) ("leave to amend . . . should be granted more liberally to pro se plaintiffs").

---

[55] Opp'n – ECF No. 170-3 at 39; *see* Mot. – ECF No. 150 at 23 n.13, 25 (making this argument).

The standard Rule 15(a) analysis supports that conclusion. A court considers five factors to determine whether to grant leave to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff previously amended his complaint. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). Of the factors, prejudice to the opposing party is the "touchstone of the inquiry under rule 15(a)" and "carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). The party opposing a motion to amend bears the burden of showing prejudice. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

All factors militate against leave to amend. Ms. Jiang's thousands of pages of filings do not establish any basis for a claim against the defendants. Her mother lacks standing.

## CONCLUSION

This order summarizes the law and is not a dispositive order. Instead, it will serve as the foundation for next steps.

The next step is that the court severs Ms. Qin's claims into a separate but related case that will be given a new case number. Fed. R. Civ. P. 21. Then, it will file a report and recommendation that the case against Ms. Qin be dismissed for lack of standing (attaching this order as the justification for that recommendation).

Then, the court will enter a separate dispositive order in this case granting the motion to dismiss for the reasons stated in this order, without leave to amend, and thereafter will enter judgment in favor of the defendants.

**IT IS SO ORDERED.**

Dated: January 17, 2025

_____
LAUREL BEELER
United States Magistrate Judge